UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

JOHN BEDNARZ JR.,
ALISON BEDNARZ,

      Plaintiffs,

      v.                                        Case No. 15-C-0458

RYAN LOVALD, NICHOLAS RYDZEWSKI,
ASSET TOWING & RECOVERY LLC,

      Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND BAR TESTIMONY (DOC. 48), GRANTING DEFENDANTS' RULE 7(H) EXPEDITED NON-DISPOSITIVE MOTION FOR LEAVE TO SERVE SUBPOENA (DOC. 72), DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 34), DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 39), AND SETTING STATUS CONFERENCE

      In the early morning hours of March 25, 2015, defendants attempted to repossess a 2001 minivan owned by John and Alison Bednarz. Appearing on the front porch of his home with a firearm in hand, John Bednarz told defendant Ryan Lovald to leave. There is no dispute that Lovald left the Bednarz residence. However, the parties cannot agree on whether Lovald left to call the West Allis Police about the firearm or to assist with the repossession. Further, they cannot agree on whether Bednarz consented prior to the time that defendants took possession of the minivan. While the parties have filed cross-motions for summary judgment, genuine issues of material fact preclude relief. Additionally, defendants have filed motions to strike portions of Mark Lacek's expert report and deposition testimony, and to serve a subpoena on Gramann Reporting to obtain a copy of the audio recording of Lacek's May 3, 2016, deposition. The latter motions will be granted, and a conference will be held for further scheduling.

As an initial matter, defendants moved to strike portions of Lacek's expert report and deposition testimony that set forth legal conclusions and to bar Lacek from testifying regarding those matters at trial. Lacek, who owns a repossession company and has worked in the field for over 30 years, has been retained by plaintiffs to offer an expert opinion "referencing breach of the peace involving repossession of a 2001 Honda Odessey on . . . March 25, 2015, from John Bednarz, Jr." At this stage, defendants have not filed a *Daubert* challenge and have limited their request to striking certain portions of Lacek's opinions.

With respect to Lacek's expert report, defendants object to the following:

1. In my opinion, taking into consideration the documents reviewed in this case, the Uniform Commercial Code (UCC), and the numerous rulings by courts across the country regarding the self help repossession process, a breach of peace did occur during the repossession of the Bednarz vehicle. (P. 7)

2. Lovald was wrong to ask the police department to assist him in the repossession effort. Lovald admitted knowing that a police officer at the scene of a repossession is a breach of the peace. (P. 7)

3. The acts by defendants Asset Towing & Recovery, Nicholas Rydzewski and Ryan Lovald could be ruled as violations of the FDCPA. (P. 9)

4. Defendants Lovald, Rydzewski and Asset Towing & Recovery could not legally repossess the vehicle due to the protest by Mr. Bednarz. Clearly defined in the C.A.R.S. training manual, color of law at the scene of the repossession constitutes a breach of the peace. (P. 9)

5. Defendants Lovald, Rydzewski and Asset Towing & Recovery could not use the City of West Allis to accomplish repossessing the Bednarz vehicle. (P. 9)

The deposition testimony at issue includes the following statements:

1. I've been asked to offer my opinion referencing breach of the peace involving repossession of a 2001 Honda Odessey . . . . (6:4-6)

2. At any time during the police department's interactions with Bednarz, the repossession company could have made it clear to the police it would be a breach of the peace to continue with the repossession efforts. (12:20-24)

3. The acts by Defendants Asset Towing & Recovery, Nicholas Rydzewski and Ryan Lovald could be ruled as a violation of the FDCPA. Specifically – and you requested specifically – Defendants Lovald, Rydzewski and Asset Towing & Recovery could not legally repossess the vehicle due to the protest by Mr. Bednarz, clearly defined in the CARS Training manual, color of law at the scene of the repossession constitutes a breach fo the peace. (12:25-13:8)

4. Additionally, Defendants Lovald, Rydzewski and Asset Towing & Recovery could not use the Defendant, City of West Allis, to accomplish repossessing the Bednarz vehicle. (13:9-12)

5. The efforts of the West Allis Police Department place the police department in violation of the Wisconsin Consumer Act. (13:13-15)

6. The CARS training program clearly defines breach of the peace as it references asking police officers to assist in the repossession of a vehicle. (13:18-20)

7. [I]n my opinion the defendant had knowledge that asking the police department for assistance was a violation of first the breach of the peace . . . ." (13:23-14:3)

8. In my opinion, that's clearly police involvement and color of law in the actual repossession. (43:1-3)

9. [W]hen the police department is on the scene of repossession, then it is considered a wrongful repossession because police are not by law . . . . (58:7-10)

In responding to defendants' motion, plaintiffs agree to redact the first conclusion from Lacek's report regarding the breach of peace, as well the lines in the deposition transcripts that are the subject of objections # 5 and # 8. That said, plaintiffs maintain that the remaining statements concern standards in the repossession industry that will assist

3

the fact-finder in understanding the evidence. As such, plaintiffs believe they are not de facto legal opinions but rather context regarding policies, training and procedures.

Rule 702 sets the standard for the admissibility of expert testimony. Defendants do not raise a *Daubert* challenge at this time, so the focus is on whether Lacek is offering opinions about legal issues that will determine the outcome of the case. Such testimony is inadmissible. *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)(citing *United States v. Sinclair*, 74 F.3d 753, 757 n. 1 (7th Cir.1996)). Put simply, experts cannot testify about legal issues on which the judge will instruct the jury. *Sinclair*, 74 F.3d at 758, at 758, n.1.

The Wisconsin Consumer Act ("WCA") prohibits creditors from breaching the peace during a self-help repossession. Wis. Stat. § 425.206(2)(b). Additionally, whether a debt collector has a right to possession of property under § 1692f(6) of the Fair Debt Collection Practices Act "(FDCPA") depends on the applicable state self-help repossession statute. Again, if the debt collector breaches the peace, there is no right of possession and there is a violation of the FDCPA. Consequently, Lacek cannot offer his opinion on whether the defendants breached the peace or otherwise violated the WCA or FDCPA. Accordingly, defendants' motion to strike and bar testimony regarding ultimate legal conclusions will be granted.

Next, defendants seek leave to serve a subpoena on Gramann Reporting to obtain the audio recording from the May 3, 2016, video conference deposition of plaintiffs' expert, Mark Lacek. The motion was prompted by an errata sheet provided by plaintiffs' counsel on July 18, 2016, in which Lacek indicated he was changing a response to a question. Defendants asked Gramann Reporting to provide the tape; however, on August 9, 2016,

4

Gramann Reporting advised the parties that it would not release the audio recording in the absence of permission from both, a subpoena, or a court order. On August 9, 2016, plaintiffs' counsel advised that plaintiffs will not authorize the release of the recording.

Plaintiffs oppose the subpoena on the ground that the deposition notice never stated that the deposition would be recorded via audio means, defendants have failed to show excusable neglect, and the audio recording is unnecessary. Lacek's deposition notice provided for stenographic recording and/or video recording. *See* Fed. R. Civ. P. 30(b)(3) (party who notices the deposition must state in the notice the method for recording the testimony). According to the plaintiffs, defendants request is nothing more than a "back-door modification of their decision to record Mr. Lacek's deposition via stenographic means." Moreover, the motion was filed "seventy-seven days after discovery has closed, 111 days after conducting the deposition, and 159 days after noticing the deposition."

Discovery closed June 6, 2018. In general, a motion made after the time has expired requires a showing that the party failed to act because of excusable neglect. Fed. R. Civ. P. 6(b)1)(B). Here, plaintiffs did not serve defendants with the errata sheet until July 8, 2016 – one month after the discovery deadline. It does not appear that defendants would be requesting the audio recording had Lacek not changed his answer. As such, the request to serve the subpoena after the discovery deadline arises from circumstances outside of the defendants's control. Further, after plaintiffs filed the errata sheet, defendants took steps to request the audio recording. More important, there is no prejudice to the plaintiffs as Lacek will be subject to cross-examination regardless of the subpoena and defendants are seeking material which was "produced" during the discovery period with plaintiffs' knowledge. Therefore, the court will allow defendants to serve the

5

subpoena on Gramann Reporting with defendants bearing all reasonable costs associated with production of the recording.

FINDINGS OF FACT

Nicholas Rydzewski owns Asset Towing, and Lovald is an employee of that company. (Compl. ¶ 16; Rydzewski Dep. 4-5.) Lovald arrived at the Bednarz residence early on March 25, 2015, to repossess a 2001 Honda minivan subject to a lien. (Lovald Dep. 7-8, 32; J. Bednarz Dep. 12, 22.)

While Lovald was attempting to repossess the minivan, John Bednarz heard loud crashing sounds outside. (J. Bednarz Dep. 22.) Bednarz exited his residence with a firearm. (*Id.*) Defendants have pled that Bednarz kept "his firearm next to his side at all times"; however, Lovald has testified that Bednarz "came out and he pointed a gun" at Lovald. (Answer ¶ 32; Lovald Interrog. Resp. 4; Lovald Dep. 8.) In any event, the parties agree that Bednarz told Lovald to leave and to never come back. (Lovald Dep. 8.)

After leaving, Lovald drove down the road to Rydzeswki. (Lovald Dep. 7, 15; Rydzewski Dep. 11-12.) Rydzewski told Lovald that he should call the police to report "a man with a gun." (Rydzewski Dep. 12, 39, 48-49, 57). At approximately 4:06 a.m., Lovald called the West Allis Police Department and said "The owner of the vehicle that we were trying to repossess came out with a gun, so we were wondering if you were able to send a squad over to assist." (Lovald Interrogatory Response 4; Fletcher Dep.. Ex. 1; Lovald Dep. 7, 45-46.) Certain police officers arrived where Lovald and Rydzewski were waiting, and spoke with Lovald and Rydzewski. (Lovald Dep. 16-17; Rydzewski Dep. 12, 17, Townsend Aff. ¶ 5, Ex. D, ¶ 7, Ex. G.)

6

The officers, along with Lovald and Rydzewski, went to the police substation. (Lovald Dep. 16; Rydzewski Dep. 12, 17; Townsend Aff. ¶ 8, Ex. H, 9; Gold Dep. 11, Maxwell Dep. 8-9.) Officers at the substation spoke to Lovald and Rydzewski about what had occurred during the repossession attempt and whether they wanted to press charges. (Lovald Dep. 16-17; Rydzewski Dep. 12, 17; Gold Dep. 10-11; Maxwell Dep. 8-9.) Lovald gave his statement. (Lovald Interrog. Resp. 4.) Rydzewski and Lovald explained the repossession process to the officers, and Rydzewski provided the police with a copy of the repossession order. (Rydzewski Interrog. Resp. 4; Lovald Dep. 30, 46-47.) Rydzewski's statement to the police states that he "returned to the area in order to speak with officers and provide documentation for the repossession order." (Fletcher Dep. Ex. 2.)

Neither Rydzewski nor Lovald wanted to press charges. Rydzewski explained to the police that they "did not want to press charges and just wanted the vehicle." (Rydzewski Interrog. Resp. 4.) According to his statement, Lovald said that "he did not want to pursue any charges regarding having a firearm pointed at him. He only wanted officers to return to the residence and standby for the repossession." (Fletcher Dep. Ex. 2.) However, Lovald denies asking them to standby for repossession. (Lovald Dep. 44.) In any event, Alicia Vergis of Asset Towing testified in her deposition that Asset Towing tries not to have police on the scene at all unless there's a replevin on file because that's "breaching the peace" and they don't want to waste the officer's time. (Vergis Dep. 55.) Vergis also testified that they are allowed to call the police if they "feel threatened" but that the call should be related to the threat. (Vergis Dep. 59.)

Other police officers arrived at the Bednarz residence. (J. Bednarz Dep. 35-36; Corwin Dep. 7-8, 24; Foy Dep. 9, 25; Maxwell Dep. 8-9.) The officers handcuffed Bednarz

in his bedroom while they questioned him about the firearm and repossession attempt. (J. Bednarz Dep. 41; Foy Dep. 9-11.) Defendants were not present for the questioning. (J. Bednarz Dep. 48-49.) Although the officers informed Bednarz that they had proper paperwork for the repossession of the minivan, the paperwork was never shown to Bednarz even though he requested to see it. (J. Bednarz Dep. 45.) In addition, Bednarz testified that the police officers required him to give up his keys to the minivan. Officer Foy testified that Bednarz was willing to give up his keys to have the vehicle removed. (J. Bednarz Dep. 48; Foy Dep. 32.) Allison Bednarz testified that the police told her to get her key to the minivan and give it to them. (A. Bednarz Dep. 43.)

Lovald and Rydzewski testified that they understood the plaintiffs had changed their minds and consented to the repossession. (Lovald Dep. 8, 28; Rydzewski Dep. 30-32, 50-51, 66.) Consequently, Lovald and Ryzdeski went to the Bednarz residence to repossess the vehicle. (Lovald Dep. 8; Rydzewski Dep. 30-32.) The police gave Lovald and Rydzewski the keys to the minivan. (Lovald Dep. 8; Rydzewski Dep. 30- 32; Foy Dep. 19-20, 32, 34-35.) John Bednarz testified that police kept him away from Lovald and Rydzewski while they repossessed the minivan. (J. Bednarz Dep. 64.) The officer stated "I thought maybe it was best that there is no contact between the tow truck driver and Bednarz, just to prevent any further escalation due to the initial report." (Corwin Dep. 31.) At some point, Bednarz moved his work vehicle because he was told that the repossession agents did not want to damage the work vehicle. (Lovald Dep. 49-50; Ryzdeski Dep. 30-32; Foy Dep. 20-21; J. Bednarz Dep. 59.) The police remained at the Bednarz residence while Lovald and Rydzewski repossessed the minivan. (Lovald Dep. 26, 27; Rydzewski Dep. 30-32; Corwin Dep. 10; Foy Dep. 23; Gold Dep. 14; Maxwell Dep. 15.) According to the police

8

report, the first police officer arrived on the scene at 4:15 a.m. and left after the repossession at 4:54 a.m. (Fletcher Dep. 52.)

Alicia Vergis, on behalf of Asset Towing & Recovery, testified that if a debtor says they cannot take the vehicle, the Asset employee is instructed to leave and they will get the vehicle another time. (Vergis Dep. 17.) She further testified that there will always be another time to repossess the vehicle, such as when the debtor is out showing, so that there is no contact. (Vergis Dep. 26.) According to her understanding, a breach of peace occurs when the debtor says that "you cannot take my vehicle." (Vergis Dep. 39.) Vergis testified that Asset Towing & Recovery tries not to have police on the scene at all unless there is a replevin on file because "that's breaching the peace" and they don't want to waste their time. (Vergis Dep. 55.) At the same time, she testified that Asset Towing & Recovery knows that they can call the police when they feel threatened. (Vergis Dep. 59.)

## CONCLUSIONS OF LAW

Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. The court construes "all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). On cross-motions for summary judgment, the court draws

9

inferences "in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008).

Before turning to the respective motions, the court notes that plaintiffs have provided notice that they are withdrawing their claims under 15 U.S.C. §§ 1692d, 1692(1), 1692e, 1692e(5), 1691e(10), 1692(f) and 1692f(1). Therefore, the remaining claims are under 15 U.S.C. § 1692f(6), WCA and § 1983.

Plaintiffs moved for partial summary judgment on the ground that defendants breached the peace while repossessing the Bednarz vehicle in violation of the WCA and the FDCPA. They have reserved the issues of damages under the WCA and the FDCPA and the issues of liability and damages under the Civil Rights Act. Meanwhile, defendants assert that the plaintiffs' WCA and FDCPA claims fail because they did not "breach the peace in repossessing the vehicle, threaten or harass plaintiffs, or attempt to enforce a right they knew or had reason to know did not exist. Defendants also maintain that plaintiffs' § 1983 claim fails because defendants did not act under the color of law inasmuch as there is no evidence of a meeting of the minds between defendants and police and no evidence that defendants were willful participants in joint action with the police.

The WCA prohibits creditors from breaching the peace during a self-help repossession. The statute provides:

> (1) Notwithstanding any other provision of law, no merchant may take possession of collateral or goods subject to a consumer lease in this state except when any of the following apply:
>
> > (a) The customer has surrendered the collateral or leased goods.
> >
> > (b) Judgment for the merchant has been entered in a proceeding for recovery of collateral or leased goods under

10

s. 425.205, or for possession of the collateral or leased goods under s. 425.203(2).

(c) The merchant has taken possession of collateral or leased goods pursuant to s. 425.207 (2).

(d) For motor vehicle collateral or goods subject to a motor vehicle consumer lease, the customer has not made a demand as specified in s. 425.205(1g)(a)3. and, no sooner than 15 days after the merchant gives the notice specified in s. 425.205(1g)(a), the merchant has taken possession of the collateral or goods in accordance with sub. (2).

(2) In taking possession of collateral or leased goods, no merchant may do any of the following:

(a) Commit a breach of the peace.

(b) Enter a dwelling used by the customer as a residence except at the voluntary request of a customer.

Plaintiffs allege that the defendants violated Wis. Stat. § 425.206(2) by breaching the peace when taking plaintiffs' vehicle. In support, plaintiffs cite *Hollibush v. Ford Motor Credit Co.,* where the Wisconsin Court of Appeals found a breach of peace after the creditor repossessed Florence Hollibush's Ford Bronco in disregard of Hollibush's fiancé, who said "[Y]ou are not going to take the Bronco." 179 Wis. 2d 799, 812 (Ct. App. 1993). The *Hollibush* court looked to Section 9-503 of the Uniform Commercial Code, Wis. Stat. § 409.609, and cases from other jurisdictions to determine what constitutes a breach of peace. 179 Wis. 2d at 804-807. While agreeing that consent is not necessary for a self-help repossession, the court found "considerable difference between lack of consent and a debtor's affirmative statement to a person in the process of repossessing collateral that the collateral may not be taken." *Id.*, 179 Wis. 2d at 806. Ultimately, the court agreed with Hollibush's assertion that "no means no" because the threat of potential violence is possible

11

if the debtor's objection is ignored. *Id.*, 179 Wis. 2d at 809. Applying this reasoning, plaintiffs maintain that defendants should have obtained a court order and the assistance of a judicial officer before continuing with the repossession after Bednarz objected in the first instance.

In the case at bar, there is no dispute that John Bednarz exited his residence with a firearm after Lovald arrived. Like the debtor's fiancé in *Hollibush*, Bednarz objected to repossession of his property. However, in stark contrast to the *Hollibush* facts, Bednarz carried -- and may have pointed – a firearm at Lovald. Lovald called the police and discussed the firearm incident. Whether he discussed more with officers has not been determined. Regardless, the evidence in the light most favorable to the defendants establishes that Bednarz changed his mind about the repossession and turned over his vehicle. Notably, the court in *Hollibush* did not consider whether a debtor's initial objection requires a creditor to resort to judicial remedies if the debtor later changes his mind.

At this time, the court does not find, as a matter of law, that the mere presence of police officers when the Bednarz's vehicle was repossessed constitutes a breach of peace where (and if) the officers were responding to the earlier gun incident. The material facts of this case are in dispute. Under the defendants' version of the facts, Lovald left the Bednarz's property as soon as Bednarz objected to the repossession of his vehicle. Lovald contacted the police because of the firearm incident, and Lovald was told that plaintiffs had consented to repossession. Only then did Lovald repossess the vehicle. On the other hand, the facts taken in the light most favorable to the plaintiffs establish that Bednarz objected to the repossession, never changed his mind, and only turned over his keys to the vehicle because of the police presence. The officers remained on the scene during the

12

repossession, reviewed defendants' paperwork, told Bednarz to move his work vehicle and removed property from the Bednarz van, then kept Bednarz separated from the defendants until the repossession was complete. These vastly different versions of events precludes summary judgment for either party on the WCA and FDCPA claims.

Finally, defendants have moved for summary judgment on the § 1983 claim contending they did not act under the color of law. To prove a § 1983 violation, plaintiffs must show (1) an action taken under color of state law (2) which violates his federal constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 1604, 26 L. Ed. 2d 142 (1970). Typically, a § 1983 violation occurs when the state or one of its agents violates a plaintiff's constitutional rights. Nevertheless, private persons, "jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); *see also Jackson v. Pantazes*, 810 F.2d 426, 429–30 (4th Cir.1987) (holding that bail bondsman was state actor where he forcibly entered a home to search for a felon while accompanied by police officers).

Taking the facts in the light most favorable to the plaintiffs, officers arrived shortly after Lovald's initial attempt to repossess the vehicle. They handcuffed Bednarz for an "hour-and-a-half to two hours," refused to show him the paperwork, asked to see his car payment history, and told him "they would not leave until [he] handed over the keys." Meanwhile, Lovald told officers not to press charges regarding the firearm, but asked them to assist. Whether the officers assisted with the repossession and what was said to the officers and the Bednarz family remains in dispute. Hence, there is a genuine issue of material fact that precludes summary judgment. Now, therefore,

13

IT IS ORDERED that defendants' motion to strike and bar testimony is granted. (Doc. 48.)

IT IS FURTHER ORDERED that defendants' Rule 7(h) expedited non-dispositive motion for leave to serve subpoena is granted with defendants to bear the costs. (Doc. 72.)

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment is denied. (Doc. 34.)

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied. (Doc. 39.)

IT IS FURTHER ORDERED that this court will conduct a status conference on November 15, 2016, at 3:00 p.m.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE